OPINION OF THE COURT
Edward H. Lehner, J.
The basic issue raised in this CPLR article 78 proceeding is whether the decision of the Commissioner of the New York City Department of Employment (DOE) to exclude all propri *81 etary institutions from eligibility to receive grants under the Federal Job Training Partnership Act (JTPA) was arbitrary. The court finds that it was and remands this proceeding to the DOE to determine petitioner’s request for a contract on the merits of the application.
The JTPA (29 USC § 1501 et seq.) was enacted in 1982 to replace the Comprehensive Employment and Training Act (the CETA program), with the congressional purpose stated to be (§ 1501): "to establish programs to prepare youth and unskilled adults for entry into the labor force and to afford job training to those economically disadvantaged individuals and other individuals facing serious barriers to employment, who are in special need of such training to obtain productive employment”. In the City of New York the program is administered by the DOE which enters into contracts calling for payment of Federal moneys to applicants providing the type of training and education that is consistent with the goals of the program.
For several years petitioner has obtained JTPA grants and had received commendations for the work it had done. However, this year a grant was denied because the city determined not to enter into contracts with proprietary institutions. The Commissioner of DOE states that this decision was substantially based on testimony given on March 2, 1989 to a committee of the State Legislature by the City Commissioner of Consumer Affairs, and a report dated February 28, 1989 issued by a not-for-profit organization known as Interface, both of which detailed abuses committed against poorer New Yorkers by proprietary institutions.
Some of the abuses specified in the Interface report were: deceptive recruiting (offering free courses, but thereafter persuading the student to enroll in courses for which tuition is charged); recruiting students not qualified to complete a course and retaining them through false test scores, resulting in high rates of defaults on Federally guaranteed student loans; collecting duplicate tuition from two separate government agencies. The report, however, did not single out the institutions guilty of the abuses.
In this proceeding petitioner seeks an order directing the city to approve petitioner’s application for a JTPA contract and preliminarily enjoining the city "from disbursing to anyone but petitioner $1.3 million of federal funds received by respondents pursuant to” the act. Apparently the city is about *82 to award JTPA contracts involving approximately $22 million it received from the Federal Government under the program.
In her opposing affidavit dated June 6, 1989, the Commissioner of DOE stated: "Because of DOE’s inability to determine with certainty whether or to what degree the abusive practices * * * occur at any particular proprietary school, and the impossibility of monitoring each such school for such practices, due to DOE’s financial constraints and staff limitations, DOE determined not to award JTPA funds to any proprietary schools for program years 1989 through 1991. Contrary to [petitioner’s] arguments, whether prior DOE assessments found that [petitioner] performed satisfactorily in the past is irrelevant”.
The Commissioner pointed out that many proprietary schools have a very high percentage of student loan defaults, including petitioner which in 1985 had a default rate of 55%. A postargument story in the New York Times (News of the Week in Review, June 11, 1989, at 7, col 1) reports that approximately one half of the $1.8 billion of defaulted Federally guaranteed student loans were of students of profit-making trade schools. The Commissioner contrasted the record of these schools to that of community organizations to which DOE intends to award contracts. However, only a few of these groups act as agents for the processing of student loans. In her affidavit the Commissioner opined that in light of this fact, "along with the fact that these organizations are not profit-based * * * those organizations [do not] have the same incentives to engage in abusive practices”.
Subdivision (a) of 29 USC § 1517 states the following with respect to factors to be considered in selecting organizations to participate in the program: "The primary consideration in selecting agencies or organizations to deliver services within a service delivery area shall be the effectiveness of the agency or organization in delivering comparable or related services based on demonstrated performance, in terms of the likelihood of meeting performance goals, cost, quality of training, and characteristics of participants. In complying with this subsection, proper consideration shall be given to community-based organizations as service providers.”
The Senate report submitted in connection with the bill creating the JTPA stated the following with respect to the selection of the service providers (S Rep No. 97-469, reprinted in 1982 US Code Cong & Admin News 2652-2653):
*83 "service providers are to be selected on merit which is to include both the quality and the cost of providing service. There are no presumptions or preferences for one type of institution or organization over another. Fair competition is to be the rule. * * *
"The Committee is aware of the existence of certain private organizations which also provide education services under certification by appropriate State authorities. The Committee is interested in seeing that the private sector has the opportunity to participate in providing educational services under this Act, and therefore encourages the private sector to be considered along with other service providers. In a performance-driven employment and training system, it is expected that determination of service providers will be made on the basis of competition.”
The law does not preclude proprietary institutions from participating in the program, and states that the primary consideration in selecting agencies be "demonstrated performance”. The legislative history clearly indicates an intent that such entities be eligible to receive contracts. Hence, the determination to exclude all such institutions without reviewing their past performances and otherwise considering the merits of their applications (which resulted from tarring all such institutions with the same brush) is arbitrary as an abuse of the discretion vested in respondents, and is contrary to law.
In remanding petitioner’s application the court today is merely directing the DOE to consider it in accordance with applicable law, and is not suggesting the decision to be made. That is within the discretion of the agency proceeding in accordance with such law.
Thus, the petition is granted to the extent indicated, and otherwise denied.